**MAN–GAS TRANSMISSION COMPANY, Clinton Manges and Duval County Ranch Company, Appellants,**

**v.**

**OSBORNE OIL COMPANY, Aztec Petroleum Corp., Aio Joint Venture, Aztec 80–A, Ltd. and Aztec-Chittim Joint Venture, Appellees.**

No. 04–85–00124–CV.

Court of Appeals of Texas, San Antonio.

April 9, 1986.

Rehearing Denied June 26, 1986.

Marynell Maloney, San Antonio, for appellants.

James S. Robertson, Jr., Randall C. Grasso, Ronald O. Holman, Dallas, for appellees.

Before CADENA, C.J., and CANTU and KEITH,* JJ.

## OPINION

KEITH, Justice (Assigned).

The defendants below appeal from an adverse judgment rendered after a bench trial involving an alleged breach of contract. We have a lengthy record and in the interest of brevity adopt much of the succinct statement of the nature and result of the case as set forth in the brief of the Aztec plaintiffs which was adopted by the Osborne plaintiffs.

Plaintiffs entered into a gas purchase contract with appellant Man-Gas Transmission Company ("Man-Gas") on October 5, 1982 (the "Contract") and appellant began taking deliveries of gas from the wells owned and operated by plaintiffs in April 1983. Plaintiffs alleged that Man-Gas breached the Contract by failing to timely pay for gas taken during the months of March, April, May and June of 1984.

Acting pursuant to the provisions of the Contract, plaintiffs terminated the Contract by notice dated June 29, 1984, and brought suit in the 293rd District Court of Maverick County, seeking (i) damages for gas taken but not paid for, (ii) a declaratory judgment to the effect that the Contract was terminated, (iii) a declaratory judgment to the effect that appellees were entitled to use certain gathering and treatment facilities that served the wells owned and operated by appellees, (iv) a permanent injunction preventing appellants from interfering with the use by appellees of such facilities, and (v) reasonable attorneys' fees. Following a six-day bench trial, judgment was entered favoring plaintiffs with an award of actual damages in excess of 1.7 million dollars, for attorneys' fees of $100,000.00, for the declaratory judgments and the permanent injunction, sought by plaintiffs.

In the first two points of error, defendants contend that there was no evidence, or alternatively, insufficient evidence to support the trial court's findings that Man-Gas had breached its gas purchase contract with plaintiffs and the court erred in awarding damages and attorneys' fees for such alleged breach.

Plaintiffs below were holders of mineral leases and had discovered natural gas in commercial quantities on several of their leases. However, there was no gas gathering system in existence nor means of marketing the gas. Plaintiffs entered into a gas purchase contract with appellant Man-Gas and began making deliveries of gas to it from their wells in October, 1982. According to the contract, Man-Gas acquired title to the gas so delivered when it entered the Man-Gas system. The gas was sold by Man-Gas and, according to the contract, plaintiffs were to be paid therefor in monthly installments. However, as alleged by plaintiffs, Man-Gas defaulted and failed to pay for the gas during the spring months of 1984. Plaintiffs then invoked certain privileges granted to them in the contract with Man-Gas by serving a termi-

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.REV. CIV.STAT.ANN. art. 1812(d) (Vernon Supp. 1985).

nation notice and bringing suit seeking damages for the gas taken, and a declaratory judgment that they were entitled to use certain gas gathering equipment owned by Man-Gas which served their wells. They also sought a permanent injunction prohibiting Man-Gas from interfering with their use of the system; and, for their attorneys' fees.

Pursuant to the prayer of plaintiffs, the trial court pierced the corporate veil of Man-Gas and the judgment was rendered against Clinton Manges, individually, and against Duval County Ranch Company, jointly and severally, as the alter egos of Man-Gas.

■ Appellants attack the judgment by eleven points of error, many confined to an attack upon the legal and factual sufficiency of the evidence to support the trial court's findings of liability as well as damages. In passing upon these challenges, we will be guided by the usual authorities governing review of such points, namely, *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence Points of Error,"* 38 TEX.L.REV. 361 (1960); and *Garza v. Alvair*, 395 S.W.2d 821 (Tex.1965).

We have examined the record carefully, under the usual standards; and, while we do not recount the evidence in detail, do find that the trial court's judgment finds adequate support in the record. For instance, at the time plaintiffs elected to declare the contract terminated, Man-Gas had been in default of the gas payments for more than sixty days. Paragraph 9.a of the contract permitted the plaintiffs to terminate the contract with Man-Gas upon its failure to promptly pay for the gas it received from plaintiffs, such payments being due by the 25th day of the month following delivery of the gas, and the breach had continued for more than sixty days. Plaintiffs established, without contradiction that Man-Gas had been in default for many months; indeed, at a conference between the parties and their counsel, it was stipulated that Man-Gas owed plaintiffs, for unpaid gas production it had sold, $1,368,-898.06; further, in at least one instance, Man-Gas had sent a check to plaintiffs which the drawee bank had refused to honor because of insufficient funds. According to the record, at the time the trial began, Man-Gas was indebted to plaintiffs, for gas which it had received and sold, in the amount of $1,742,402.54.

We turn now to Paragraph 10 of the contract which provided, in substance, that should Man-Gas breach the contract, plaintiffs, at their option, would be entitled to the use of the facilities of Man-Gas, in exchange for the payment of the fees specified in the contract, which fees were substantially less than those provided when Man-Gas was operating its own system prior to default.

Plaintiffs made proof of the facts which entitled it to the use of the system upon the default of Man-Gas, and such testimony was accepted by the trier of the facts as supporting the relief which was granted. Plaintiff Osborne testified that upon a visit to the field where he was intending to resume production from some of the wells, he found a person claiming to be an employee of Clinton Manges at the Man-Gas system who chained and padlocked the facilities so that they could not be used in the transportation of the gas production from the wells. Further, one Morris Ashby, the reputed secretary-treasurer of Man-Gas, stated that plaintiffs would be old and gray before they would produce another MCF of gas off of the properties being serviced by the Man-Gas system. Osborne and Richard F. Seib, President of Aztec Petroleum Co., one of the plaintiffs, testified that when they went to the field shortly before commencement of the trial, they found another employee of Manges who informed Seib that he would have to physically overpower him in order to use the system; moreover, these plaintiff witnesses told of the impossibility of marketing their production without the use of the Man-Gas system; and, the impossibility of using that system when appellants continued to put new padlocks and chains on the system.

Appellants' principal contentions are that the plaintiffs had breached the terms of the contract in that one or more of the companies involved, namely Aztec, had been sued for non-payment of debt and had suffered the entry of a default judgment in a suit by Dresser Industries. However, there is nothing in our record to show that execution ever issued on such judgment or that plaintiffs' title to the leasehold interest was affected by the judgment. We have examined the several cases cited by appellants and do not find that they are in point or persuasive.

It appears that the claim of title defect now urged by appellants as an excuse for non-payment of the gas it sold from the wells is but a subterfuge and wholly lacking in substance or merit. We overrule the first seven points of error brought forward by appellants.

■ We turn now to points of error eight and nine, challenging the piercing of the corporate veil and finding that Man-Gas, Clinton Manges, and Duval County Ranch Company are alter egos of each other and liable jointly and severally to plaintiffs for the damages sustained by Man-Gas' breach of the contract.

Appellants concede in their brief that Albert Cole,

> ... even though he was the nominal president of Man-Gas ... had little, if any, valuable or relevant information regarding pipeline business ... (Br. p. 39).

Despite demand for production, appellants did not produce the corporate records of Man-Gas Transmission Company. Morris Ashby, an accountant, testified by deposition that he was vice-president, secretary-treasurer, and a director of Man-Gas Transmission Company. He testified that while he had never been a salaried employee of Clinton Manges Oil and Refining Company, he may "be an officer of it."

We reproduce, at this point, a table found in the Aztec appellees' brief, which has been compared with the record and found to be correct, showing how the defendant, Man-Gas, paid over the money which it owed to plaintiffs to the alter egos in this case:

| Date | Transferee | Amount |
|------|-----------|--------|
| 5–1–84 | South Texas Sports | $ 325,000.00 |
| 5–10–84 | South Texas Sports | 50,000.00 |
| 5–10–84 | Duval County Ranch Co. | 50,000.00 |
| 5–15–84 | South Texas Sports | 300,000.00 |
| 6–14–84 | South Texas Sports | 250,000.00 |
| 6–15–84 | Duval County Ranch Co. | 17,500.00 |
| 6–20–84 | South Texas Sports | 50,000.00 |
| 7–9–84 | Clinton Manges | 100,000.00 |
| 7–9–84 | Duval County Ranch Co. | 92,000.00 |
| 7–16–84 | South Texas Sports | 50,000.00 |
| 7–17–84 | Duval County Ranch Co. | 270,000.00 |
| 7–19–84 | Clinton Manges | 5,000.00 |
| 7–19–84 | Duval County Ranch Co. | 25,000.00 |
| TOTAL | | $1,584,500.00 |

It was established in the record that Clinton Manges was the sole stockholder of the South Texas Sports, the holder of the professional football franchise known as the San Antonio Gunslingers. Manges also owned the Duval County Ranch Company. One record which Man-Gas did have was a check register from which plaintiffs were able to make proof of the misappropriation of their funds.

This check register makes fascinating reading, disclosing, as it does a myriad of expenditures which had nothing to do with the affairs of the company, including checks for the purchase of an automobile "for Clinton," and one dated August 31, 1984, in the amount of $30,119.11 payable to "American Express, Travel Related Services Co., Inc." with the notation thereon: "For Clinton Manges, Gold Card # 3728–182568–81009." Other checks were issued for Clinton's telephone bills as well as petty cash for Duval County Ranch Co. In short, this trust account made up exclusively from money obtained from the sale of plaintiffs' gas, was handled as if it was a private personal bank account made up of legitimate earnings from a trade or profession. The table set out earlier showing more than a million and a half dollars misappropriated is not at all complete in listing the funds actually seized and embezzled by the defendants from the plaintiffs.[1]

1. It follows, from our recount of the record, that we do not agree with appellant's summa-

In support of the alter ego points, appellant has but one citation: *Torregrossa v. Szelc,* 603 S.W.2d 803 (Tex.1980). We do not disagree in any respect with *Szelc;* but, after careful study, do not find it adequate to the task assigned by counsel. Instead, we rely upon a case cited in *Szelc, supra, Tigrett v. Pointer,* 580 S.W.2d 375 (Tex. Civ.App.—Dallas 1978, writ ref'd n.r.e.), which has a fact structure similar in many respects to that before us. Appellants' eighth and ninth points of error are overruled.

In their tenth point of error, appellants complain of the action of the trial court in imposing sanctions on appellant by striking its counterclaims, thereby disrupting its trial strategy. One of the prime reasons assigned for the sanctions by appellees was the failure to honor an agreement to produce Clinton Manges for his deposition.[2]

■ In imposing sanctions for abuse of discovery process, it has been said that the trial judges have "broad, flexible, and plural" powers to select the type of discovery sanction they wish to impose under the 1981 amendments to the Rules of Civil Procedure. The exercise of such authority will not be disturbed except for an abuse of discretion. See the authorities discussed in *Waguespack v. Halipoto,* 633 S.W.2d 628, 629 (Tex.App.—Houston [14th Dist.] 1982, writ dism'd).

■ From our review of the record, we find no abuse of discretion; consequently, the tenth point of error is overruled.

While our review of the record does not reveal an abuse of discretion, we also note that appellant has failed to show harm or injury resulting from such action. The counterclaims which were stricken were all before the court on the case as presented and the court found in favor of plaintiffs and against the contentions of appellants. Under these circumstances, appellants have not shown prejudicial or harmful error. TEX.R.CIV.P. 434. The tenth point of error is overruled.

■ The final point of error complains of the refusal to grant appellants' motion for continuance. The motion avers that Clinton Manges and appellants' trial counsel both had important engagements in New York City and the State of New Mexico set upon the trial date, both of which engagements were of great importance and were scheduled before the date of the trial was fixed firmly.

Appellant, with commendable candor, concedes that

... it is generally within the sound discretion of the trial court to grant or deny a motion for continuance, and it is difficult, if not impossible, to overturn such a decision on appeal, the Courts have held, in instances of true miscarriages of justice, that the decision was so unsound as to violate due process, and the cause must be reversed. *See,* for example, *Acco International Paper Stock Corp. v. Sea-Land Service, Inc.,* 615 S.W.2d 855 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ)....

---

tion of the record in the argument contained in the brief: "Man-Gas can think of no special circumstances which would support the Trial Court's ruling."

It is difficult to reconcile such argument with the disclosures in the check register and the admitted indebtedness of Man-Gas to plaintiffs for the gas which was produced by plaintiffs, delivered to Man-Gas and sold by it before converting the proceeds to the use of appellants.

We find that the record contains an abundance of evidence supporting the trial court's holding on the alter ego question.

**2.** Plaintiff's counsel wrote to defendants' counsel:

I am agreeing to produce Seib and Rickter (the Osborne-Aztec principals), in reliance upon your agreement to produce Mr. Manges. If Mr. Manges is not present and available to be deposed, there will be no depositions. All counsel appeared in San Antonio at the time set for the depositions, Seib and Rickter and appellees' counsel traveling hundreds of miles to be present; but Mr. Manges did not show and appellees' counsel, true to his promise, "walked out" and no depositions were taken.

Appellees also complained that appellants' witness Ashby failed to furnish the information requested when he gave his deposition and that appellants' witness, Cole, failed to give his deposition.

We have found nothing in our record to disclose what efforts, if any, appellants made to avoid the conflict by a postponement of the out-of-state engagements. Moreover, appellants make no reference to the out-of-state engagements having been met, rescheduled, or any harm resulting from the trial court's action. The appellees aver, in their response to the final point of error, that they had gone to great expense to prepare for trial and had their parties and witnesses available for trial; and, as we must—as did the trial court, look at the situation from the standpoint of all of the parties. And, from our review of the complete record, we do not find an abuse of the discretion confided in the trial court. Point of error eleven is overruled.

The judgment of the trial court is in all things affirmed.